Martin Schenick, J.
This is an action for the partition of certain real property in the Town of Colonie known as the Rebusman farm. The action is, therefore, in effect, one in equity and must be examined in the light of rules of law applicable to equity. The matter as submitted to the court, both in the form of testimony at a rather lengthy trial without jury and in the briefs submitted on behalf of four interested parties, appears on its face to be extremely complicated. Analysis, however, resolves the issues down to a relatively simple point of law that, as indicated above, must be determined under the rules of equity.
The basic facts deduced from the evidence involve contractual rights as well as alleged rights concerning the title and interests collateral to the title of the Rebusman farm. The property was the subject of an issue raised in a will contest involving the estate of William H. Rebusman. In the course of the proceedings in Surrogate’s Court a stipulation was entered upon on behalf of Kenneth and Adam Rebusman pursuant to which Adam was to receive a 35% interest in the Rebusman farm. Kenneth would retain a 65% interest. The agreement went on *455 to provide that the property should be put upon the market for sale but with the right of Kenneth to have first refusal to meet any bona fide offer of purchase. On or about September 23, 1965 a corporation controlled by the plaintiffs herein made an offer of $75,000 for the property. Kenneth then asserted his right to purchase the property under the stipulation. This would mean that upon the sale of the property Adam would receive $26,250. Kenneth and Adam then entered a written agreement pursuant to which Kenneth was to exercise his right to purchase the property on or before October 15, 1965. Among other things in this agreement was a clause to the effect that Adam would provide a release of a purported lease held by the defendant Coton that had been given Coton by the late William Bebusman. Coton joined Kenneth and Adam in the execution of this agreement. The agreement was also signed by counsel for the three parties thereto. In this connection it might be noted that Mr. Duncan appeared as attorney for both Adam Bebusman and Coton.
Thereafter, Kenneth successfully applied for a loan in order to have the funds to pay Adam for his 35% interest. However, the title examination was not completed by the October 15 deadline. The closing was thereupon postponed by agreement of counsel. At that point it might be noted there is no question but that the counsel concerned had full authority to represent their respective clients. Thereafter, on October 29, while the title examination was still unsettled, the plaintiffs, through their corporate entity known as Carmen Goody, Inc., commenced an action against Kenneth Bebusman and others for specific performance of their purchase offer. On that date a lis pendens was filed in the Albany County Clerk’s office with respect to the Bebusman farm property. Mr. Vinciguerra, who represented Carmen Goody, Inc., concededly had actual knowledge of the contract between Kenneth and Adam. The Carmen Goody, Inc., action then became the subject of motions before this court which were resolved on February 10, 1966 in a decision handed down that date directing the dismissal of the Carmen Goody, Inc., action and providing that the lis pendens should be stricken. An order upon the court’s decision was entered March 7, 1966.
The testimony of Adam Bebusman indicates that during the delay caused by the Carmen Goody, Inc., action and resultant motions before this court, he became increasingly anxious for a resolution of the problem by a sale of the property so that he could obtain the $26,250 to which he would be entitled upon the basis of a $75,000 sale. In the course of the delay it appears *456 that he engaged his present counsel to supplant Mr. Duncan. It was not established, however, that he advised Mr. Duncan, or Kenneth’s counsel, Mr. Carnevale, that Duncan was no longer acting on his behalf. It is clear that Mr. Duncan, at least until some time in March of 1966, did have authority to act on behalf of Adam and, as far as Kenneth and his lawyer were concerned, he apparently continued to have that authority until around the 21st of March, 1966.
The evidence sustains a finding that Mr. Duncan, on behalf of Adam, and Kenneth’s attorney were conferring relative to a resumption of negotiations for the consummation of the contract that originally was to have been performed by October 15 and that they had set March 24 as the new date for closing. In the meantime, however, on March 21 Adam, with his new counsel, met with the plaintiffs at the office of Mr.Vinciguerra and deeded to him his interest in the property. The plaintiffs, this time under their individual names rather than as Carmen Goody, Inc., paid to Adam and/or his attorney the sum of $26,250. It is upon the basis of this transaction that the plaintiffs now seek the relief of a judgment for partition providing for the sale of the premises and a division of the proceeds. It is obvious that at best the plaintiffs can be in no better legal position than Adam Rebusman was immediately before the purported sale of his 35% interest to them.
The issue now boils down to the question of whether or not Adam, under all of the foregoing circumstances, had a right to sell his interest to the plaintiffs on March 21, just two weeks after the lis penclens was removed and the Carmen Goody, Inc., action was dismissed. It is manifest that these plaintiffs were not in the position of what might be termed ‘ ‘ innocent ’ ’ third parties who had no knowledge of the contractual claims of Kenneth Rebusman. They not only were aware of the contract between Kenneth and Adam but, indeed, they had commenced litigation to enforce their alleged rights under their purchase offer as against the rights asserted by Kenneth under his contract with Adam and Coton. They, therefore, are bound by the principles of equity, not only as plaintiffs in an' equitable action, but as purported purchasers who had full knowledge of the contractual rights of others. The issue is then whether or not Kenneth’s rights under the contract became dissipated when the contract was not performed by the date set therein, to wit, October 15, 1965 or a postponed date agreed upon by the parties through their respective authorized counsel. As stated above, the plaintiffs’ rights under no circumstances could be better than those of Adam as of March 21, 1966.
*457 The argument is raised that the performance date was not extended by a written agreement. That fact is immaterial, because at the outset the parties specifically agreed to a postponement of the closing because of the title problem. At that point, Adam became estopped either until an agreed adjourned closing date or for a “reasonable” time if no date was set. The question is whether or not the long delay subsequent to October 15 was such as to vitiate the terms of the contract in view of the fact that at least by early 1966 Adam was anxious and desirous of having the transaction consummated so that he could receive his share of the proceeds. Here is Avhere the equitable principle of estoppel enters the picture. From October 29, 1965 until March 7, 1966 the plaintiffs by their oato. action had made the title to the premises unmarketable because of the lis pendens. Furthermore, they had commenced litigation affecting the property based upon a purported purchase offer that they were endeavoring to enforce. During this period it is obvious that Adam could not enforce his rights under the stipulation and agreement Avith Kenneth. The property did not become marketable until the lis pendens was officially lifted by the order of this court dated March 7, 1966.
The plaintiffs argue that they should not be subjected to the doctrine of equitable estoppel. They cannot substantiate that position at least during the period of litigation that terminated March 7, 1966. They further argue that the lis pendens should not be deemed to have made the property unmarketable so that the contract could not have been performed during the period of litigation while it Avas in effect. They cite several cases, including Strasbourger v. Hesu Realty Co. (198 App. Div. 805) and Weissberger v. Wallach (124 App. Div. 382). In each of those cases there existed a Us pendens Avhich was not the result of action by the party seeking relief. As a matter of fact, in the Strasbourger case, the lis pendens was referred to as “worthless”. In the case at hand the plaintiffs themselves placed the lis pendens against the property during the pendency of an action which they had brought presumably in good faith. It is obvious that circumstances resulting in equitable estoppel exist here that Avere clearly extraneous to the issues in the cases cited by the plaintiffs. The conclusion is inescapable, therefore, that as of March 7, 1966 the plaintiffs had no standing in a court of equity. Adam Rebusman, at least until that date, could not have enforced his agreement Avith Kenneth and Kenneth’s rights certainly existed until the time on that date at which the order lifting the lis pendens was filed.
*458 The issue thus presented is whether the failure to consummate the agreement within the next two weeks was such an unreasonable delay as to vitiate the contract performance of which was properly and legally postponed by agreement of the parties on or about October 15, 1965, the performance date set forth therein. In this connection it must be remembered that Mr. Duncan still had apparent authority to represent Adam Rebusman. Adam did not notify Kenneth or Kenneth’s attorney that Mr. Duncan lacked that authority. Accordingly, it cannot be said that Kenneth acted in anything but good faith in proceeding in such a manner as to fix the new closing date of March 24, just 17 days from the date on which the title to the premises became marketable. During this period the plaintiffs knew that Kenneth had a claim based on his contractual rights. Instead of advising him, however, that they proposed'to deal with Adam for 35% of the Rebusman farm property, they completely ignored him and his attorney and proceeded to negotiate with Adam in the office of their oavu attorney in Troy. Under these circumstances it is impossible to see how they can iioav come- into a court of equity with clean hands to enforce an equitable remedy.
The foregoing resolves the principal issue of this laAvsuit. The complaint seeking the equitable remedy of partition must be dismissed. In the course of the litigation, however, other issues have been raised. The chief among these is the purported claim of the defendant -Coton for one half of the proceeds received by Adam, apparently whether Adam’s transaction with the plaintiffs is upheld or whether he receives his money from Kenneth in the event the plaintiffs fail to prevail in this lawsuit. I cannot see how that issue can be decided in the course of this partition proceeding. It may well be that Mr. Coton has a cause of action at laAV against Adam. This court will not pass upon that question. The only issue that Coton can raise here is whether, at the present time, he has any claim to the Rebusman farm property that would be affected by this partition action. Pursuant to Exhibit 7 he entered an agreement in which it was stipulated that his leasehold interest in the premises was surrendered. This is the only conceivable claim of title to the premises on behalf of Coton that is indicated by the trial record. The deed to Adam and himself which Avas not recorded until May 6, 1966, even if otherwise valid, is not binding upon Kenneth Rebusman and, as a matter-of fact, Avould not be binding bn these plaintiffs were they to prevail in this litigation. It is adjudicated, therefore, as part of the disposition of this partition action, *459 that Coton has no right, title or interest to the Bebusman farm property. As indicated above, however, this in no way affects any claim, for damages in a legal action which he may have pending or which he may subsequently bring against Adam Rebusman.
Finally, the court notes that Adam Rebusman while of mental capacity to engage in this litigation, nevertheless, is an elderly and apparently somewhat confused man. It is suggested he might be reimbursed for legal fees arising from the transaction which has, in effect, been invalidated by this decision. The matter is, of course, presently in the competent hands of his new attorney but, because of the gentleman’s age and the complexity of this litigation, the court feels it incumbent to make reference to this matter so that counsel concerned may take every precaution to see that his rights are explained to him and that he is fully advised and protected.
In the course of the trial, reservation of decision was made on several motions. These are now resolved so as to be in accordance with this opinion. The partition action having been dismissed it is now incumbent upon Kenneth Rebusman to perform under his contract. In view of the fact that these plaintiffs have already paid the sum of $26,250 to Adam the practical mechanics of effecting the judgment to be entered in accordance herewith require that Kenneth Rebusman pay to the plaintiffs the aforesaid sum of $26,250. If this is not done within a period of 20 days from the date of the entry of an order in accordance herewith, the court would alter its position as stated by holding that the contract was not performed within a “ reasonable time ”. In the event, therefore, that such payment is not made within the aforesaid 20 days the relief sought by the plaintiffs in the partition action will be granted. Otherwise, the complaint herein is dismissed but without costs to any party thereto. The basis for the elimination of costs is the exercise of the discretion of the court taking into consideration the extreme complexities of the litigation and the confusion which surrounds some of the cross issues among the parties. In entering judgment the court suggests that counsel for all concerned confer so that the proposed judgment to be submitted be either the subject of agreement among the parties or that questions that may arise from this necessarily long opinion may be resolved through conference with the court.